**FILED**
U.S. District Court
District of Kansas

03/13/2026

Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BRADLEY GILLESPIE,

     **Plaintiff,**

     v.                        **CASE NO. 25-3265-JWL**

DARCIE HOLTHAUS, et al.,

     **Defendants.**

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Bradley Gillespie is hereby required to show good cause, in writing to the undersigned, why his Eighth Amendment claim and his First Amendment claims based on the lack of library access, should not be dismissed for failure to state a claim. The Court finds that the proper processing of Plaintiff's mail censorship claim and retaliation claim cannot be achieved without additional information from appropriate KDOC officials. Plaintiff's due process claims, claims based on violations of prison regulations, and claims based on grievance responses and procedures are dismissed for failure to state a claim.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). On December 31, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC and granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies. Plaintiff has filed a response (Doc. 8) and an Amended Complaint (Doc. 9). This matter is before the Court for screening Plaintiff's Amended Complaint. The Court's screening standards are set forth in the MOSC.

1

Plaintiff's claims are based on his treatment after he chose to remain silent during a prison investigation regarding his cellmate. Plaintiff claims that Defendants Thomas Williams and Francisco Ayala violated his due process rights by placing him in segregation without a hearing. (Doc. 9, at 6.) He claims that Williams and Ayala also failed to release him within three days as required by prison regulations. *Id*.

Plaintiff claims that Defendants Williams, Ayala, Mathew Rudd, and Tyler Clark retaliated against him for "exercising his constitutional right to remain silent under the 5th Amendment." *Id*. Plaintiff claims that Defendants Williams, Ayala, and Rudd censored his outgoing mail without fair notice or due process. *Id*. Plaintiff claims that Defendant Clark ordered a mass shakedown of E Cell-house and Larry Teach retaliated against Plaintiff by destroying his property and room "in an unethical punitive shakedown" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id*.

Plaintiff alleges that Defendants Williams and Clark denied Plaintiff access to the library during his legal appeals, causing "injury to his appeals and financial status." *Id*. Plaintiff claims that Defendants Darcie Holthaus and Jeremy Hoepner failed to correct the issue regarding access to the library after Plaintiff filed a grievance on the issue. *Id*.

Plaintiff claims that Defendants Kyli Sparks and Robin Leonard censored Plaintiff's mail based upon a "nonexistent 1 once rule." *Id*. Plaintiff alleges that the mail was not sent, and they gave the mail to Defendants Ayala and Rudd without notice or a reason for the censorship. *Id*. at 6–7. Plaintiff claims that Defendants Holthaus, Williams, and Hoepner failed to correct the mail censorship issue after Plaintiff filed grievances on the issue. *Id*. at 7. Plaintiff claims that these same Defendants failed to adhere to their administrative remedies and violated 42 U.S.C. § 1997e(a). *Id*.

Plaintiff claims that after he was released from segregation, Defendants Williams, Clark, Ayala, and Rudd began to retaliate against Plaintiff for remaining silent: by taking his job; by denying him access to the library; by censoring his mail; by Larry Teach destroying Plaintiff's room and damaging his property during a shakedown; by removing him from the Hustle 2.0 program; and by using the mail room to censor his mail without notice or due process. *Id* Plaintiff claims that Defendants Sparks and Leonard censored his mail by using a nonexistent one once rule. *Id*.

Plaintiff claims that Defendants Williams, Holthaus, and Hoepner failed to adhere to the grievance process and failed to provide an adequate procedure. *Id*. Plaintiff claims that on numerous occasions his grievances were not answered. *Id*. He claims that some grievances were lost or destroyed, and the responses never addressed or corrected the issues. *Id*.

Plaintiff claims that Defendants Williams and Clark are subject to supervisory liability for failure to correct the actions of their staff and for failure to properly train, supervise, and control subordinates. *Id*. Plaintiff seeks compensatory and punitive damages. *Id*. at 8.

## II. DISCUSSION

### 1. Due Process

Plaintiff claims that he was placed in segregation without a hearing when he refused to cooperate with an investigation. Plaintiff alleges that this placed an atypical hardship on him. (Doc. 9, at 6.) He claims the prison regulations were violated when he was kept in segregation longer than three days without being given a written reason. *Id*. Plaintiff states in his response that he was in restrictive housing for one week. (Doc. 8, at 2.) He was placed in segregation on September 11, 2024, and was released on September 18, 2024. *Id*. at 4. Plaintiff claims that this violated his right to due process. (Doc. 9, at 6.)

3

The Due Process Clause protects against "deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Id*. (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has

4

authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not shown that his one-week assignment to restrictive housing imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). Plaintiff was briefly placed in segregation as part of an ongoing investigation. The Court found in the MOSC that Plaintiff's due process claim was subject to dismissal. Plaintiff's Amended Complaint fails to cure the deficiencies noted in the MOSC and fails to state a due process claim. Plaintiff's due process claims are dismissed.

### 2. Violations of Regulations

Plaintiff claims that Defendants failed to follow prison regulations when they kept him in segregation for more than three days without a written reason. Violations of state statutes and prison regulations do not provide a cause of action under § 1983. Plaintiff must state a federal

constitutional violation.  State statutes do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States.  *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Likewise, the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).  As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007).  The Court found in the MOSC that Plaintiff's claims based on state statutes/regulations and IMPPs are subject to dismissal for failure to state a constitutional violation.  Plaintiff's Amended Complaint fails to cure the deficiencies noted in the MOSC and fails to state a claim based on the violation of prison regulations.  Any claim based on violations of state statutes or prison regulations is dismissed.

### 3.  Grievances

Plaintiff claims that Defendants Holthaus, Williams, and Hoepner violated 42 U.S.C. § 1997e(a) and failed to adhere to their administrative procedures.  (Doc. 9, at 7.)  Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff acknowledges that a grievance procedure is in place and that he used it. Plaintiff's claims relate to his dissatisfaction with responses or the lack of responses to his grievances.

The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are dismissed for failure to state a claim. These are the only claims against Defendants Holthaus and Hoepner.

### 4. Eighth Amendment

Plaintiff claims that Defendant Clark ordered a mass shakedown of E Cell-house and Larry Teach retaliated against Plaintiff by destroying his property and room "in an unethical punitive shakedown" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiff acknowledges that the mass shakedown was performed on the entire cellhouse. Plaintiff attaches to his response his notarized statement of facts that states that after

7

the shakedown there was hardly any concrete showing on the floor of his cell "because it was completely covered with legal work, clothes, books, etc. Body wash was spilled on books, papers, legal work; and boot prints [were] on everything for being scattered all over the floor." (Doc. 8–1, at 29.)

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and

8

in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff fails to state an Eighth Amendment violation, and his claims suggest, at most, negligence. Claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986); *see also Vasquez v. Davis*, 882 F.3d 1270, 1277–78 (10th Cir. 2018) (deliberate indifference requires more than negligence) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

In addition, deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."). Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property).

Plaintiff should show good cause why his Eighth Amendment claim should not be dismissed for failure to state a claim. To the extent Plaintiff alleges that the destruction of his

property during the shakedown was retaliatory, that claim is addressed as part of Plaintiff's retaliation claim.

### 5. Court Access

Plaintiff claims that he was denied access to the library during his legal appeals. (Doc. 9, at 6.) Plaintiff alleges in his Amended Complaint, without explanation, that "Defendants' actions caused injury to his appeals and financial status." *Id*. Plaintiff claims that this denied him court access and freedom of speech. *Id*. Plaintiff fails to give any explanation as to how the lack of library access violated his freedom of speech.

In his response to the MOSC, Plaintiff argues that the lack of library access caused injury to his habeas corpus appeals. (Doc. 8, at 5.) He states that he "could not prepare, research, or obtain legal materials for his federal habeas 2254, state habeas' [sic] under K.S.A. 60-1507 and K.S.A. 60-1501." *Id*. Plaintiff states that he raised these nonfrivolous issues:"(1) ineffective assistance of counsel, (2) multiplicity issues with his gun charges, (3) due process issue because he was placed in jail more than a week without charges and was not brought before a judge, and (4) his appellate lawyers failure to raise non frivolous issues on appeal, like the fore-mentioned issues[,] (5) due process violations." *Id*. Plaintiff also claims in his response that his "§ 2254 habeas petition became time-barred, and his K.S.A. 60-1507 and 60-1501 habeas actions were harmed, because [he] could not research, prepare, obtain legal materials, and petition the court." *Id*. at 3. He states that he lost $45,000 because he had to pay lawyers to correct damage caused by Plaintiff's lack of court access. *Id*.

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions."

*Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

The right to access the courts does not guarantee inmates the right to a law library or to legal assistance, but merely to "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 350–51 (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)). The right to access the courts is

"only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research." *Id*. at 354, 360.

Plaintiff alleges that he had to incur costs to have an attorney help with his state habeas cases. He does not allege that he was unable to file those cases. He also alleges that the lack of library access caused his federal § 2254 habeas action to become time-barred. However, there is no indication that Plaintiff has attempted to file a § 2254 petition in this Court, and he fails to explain why such an action is time-barred.

Plaintiff indicated that he was placed in segregation on September 11, 2024, and he was denied library access during his one-week segregation and following his release. Plaintiff claims the lack of library access caused injury to his habeas corpus appeals. Plaintiff filed a petition under K.S.A. 60-1507 on June 10, 2022. *See Gillespie v. Kansas*, Case No. MI-2022-CV-000069 (District Court of Miami County, Kansas). The petition was filed by Plaintiff's attorney Adam Sokoloff on June 10, 2022. *Id*. The court granted the motion to file the petition out of time. *Id*. At the January 24, 2023 hearing on the motion, the state court judge denied the motion. *Id*. On February 15, 2023, Plaintiff's attorney filed a Notice of Appeal, appealing the denied of the 1507 motion. *Id*. On March 22, 2024, the Kansas Court of Appeals affirmed the decision. *See Gillespie v. Kansas*, No. 126,273 (Kan. Ct. App.). The opinion by the Kansas Court of Appeals lists Adam Sokoloff as Plaintiff's attorney. Therefore, it appears that Plaintiff was represented by counsel throughout his first K.S.A. 60-1507 action, and the appeal was denied prior to the time Plaintiff claims he was denied library access.

Plaintiff filed a second K.S.A. 60-1507 action in Miami County on March 2, 2026, and he is represented by attorney David Miller. *See Gillespie v. Kansas*, Case No. MI-2026-CV-000034

(District Court of Miami County, Kansas).

The Tenth Circuit has found that whether or not a party is represented by counsel or proceeding pro se "is important because a court-access claim is necessarily intertwined with the assistance *vel non* of counsel." *Carr v. Zwally*, 760 F. App'x 550, 556 (10th Cir. 2019) (unpublished) (citing *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999) ("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library."); *accord Lewis v. Clark*, 577 F. App'x 786, 796–97 (10th Cir. 2014) (unpublished) (affirming dismissal of court-access claim because prisoner was represented by counsel in underlying criminal case)).

Furthermore, the Tenth Circuit has recognized that "because there is no constitutional right to 'a hybrid form of representation,'" . . . "when defendants have the assistance of counsel, courts need not consider any filings made *pro se.*" *United States v. Sandoval-De Loa*, 283 F. App'x 621, 625 (10th Cir. 2008) (unpublished) (citing *United States v. McKinley,* 58 F.3d 1475, 1480 (10th Cir. 1995) and *United States v. Bennett,* 539 F.2d 45, 49 (10th Cir. 1976) ("[P]ermission for [hybrid representation] [is] recognized as being discretionary with the trial court."); *see also United States v. Castellon,* 218 F. App'x 775, 780 n.4 (10th Cir. 2007) (unpublished) ("[W]here a defendant is represented by counsel, we do not accept pro se filings or allegations.")).

Plaintiff should show good cause why his court access claim and freedom of speech claim regarding the lack of library access should not be dismissed for failure to state a claim. To the extent Plaintiff alleges that the lack of library access was retaliatory, that claim is addressed in Plaintiff's retaliation claim.

### 6. Mail Censorship

Plaintiff claims that Defendants Sparks and Leonard censored his mail based upon a

13

"nonexistent 1 once rule." (Doc. 9, at 6.) Plaintiff alleges that Defendants violated his right to freedom of speech and his right to send and receive mail under the First Amendment. *Id*. Plaintiff alleges that Defendants Sparks and Leonard gave Plaintiff's mail to Defendants Ayala and Rudd "without notice or written penological reason of the censorship." *Id*. Plaintiff claims the mail was not sent or delivered. *Id*. at 6–7. Plaintiff claims that his mail was censored without notice or due process. *Id*. at 7. In his response, Plaintiff states that he filed a grievance asking about his mail being opened that he sent to family and friends, and "some of the mail was never received by the family and friends." (Doc. 8, at 5.) He also filed a grievance regarding "his mail is not being processed and sent out by the mailroom." *Id*. at 6. He also claims that Defendants Sparks and Leonard stopped Plaintiff's legal mail and letters from coming in citing a false one ounce rule "that did not exist." *Id*.

A prisoner does not surrender his constitutional rights at the prison gates, but "simply because prison inmates retain certain constitutional rights does not mean these rights are not subject to restrictions and limitations." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). "A prisoner has a constitutional right to have his outgoing mail processed for delivery, absent legitimate penological interests to the contrary." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (citing *Treff v. Galetka,* 74 F.3d 191, 195 (10th Cir. 1996)).

The Court finds that the proper processing of Plaintiff's mail censorship claim cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials of to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**7. Retaliation**

Plaintiff alleges that Defendants Williams, Ayala, Rudd, Clark, and Teach retaliated against him for remaining silent during the prison investigation regarding his cellmate. Plaintiff claims that these Defendants retaliated against him by: censoring his outgoing mail; destroying his property in a shakedown; taking his job; denying him access to the library; and removing him from the Hustle 2.0 program. (Doc. 9, at 6–7.)

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith*

*v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

The Court finds that the proper processing of Plaintiff's retaliation claim cannot be achieved without additional information from appropriate KDOC officials, and this claim should also be included in the *Martinez* Report.

**8. Request for Relief**

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id*. (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).

**III. Motion for Temporary Restraining Order ("TRO")**

Plaintiff has filed a motion seeking a TRO. (Doc. 11.) Plaintiff alleges that Defendants are subjecting Plaintiff to constitutional violations and retaliation on an ongoing basis. *Id*. at 1. Plaintiff claims that Defendants are engaging in mail censorship, retaliation, obstruction, and intimidation. *Id*. The only details provided by Plaintiff in the motion is his allegation that former EI1 Officer Francisco Ayala threatened to arrest Plaintiff's mother "for using their constitutional rights to seek relief for unconstitutional mail censorships." *Id*. Plaintiff asks the Court to enter an

order restraining Defendants from: censoring Plaintiff's mail "unconstitutionally under unwritten rules that are unpublished"; interfering with Plaintiff's court access; and retaliating, threatening, and intimidating Plaintiff. *Id*. at 2.

"The [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

"Except as to notice and duration, the legal standards governing a temporary restraining order ("TRO") and a preliminary injunction are the same." *Vietti v. Welsh & McGough, PLLC*, 2022 WL 1288314, at *2 (N.D. Okla. April 30, 2022) (citing *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.")). "The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration." *Id*. (citing Fed. R. Civ. P. 65(b)).

A party seeking preliminary injunctive relief must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Derma Pen, LLC v. 4EverYoung Ltd.*, 737 F. App'x 396, 402 (10th Cir. 2018) (unpublished) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)). Whether sought through a TRO or a preliminary injunction, injunctive relief is an "extraordinary remedy," and the

17

movant must demonstrate a "clear and unequivocal right" to have its request granted. *Vietti*, 2022 WL 1288314, at \*2 (citing *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

Plaintiff has failed to show that he will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Plaintiff fails to set forth any efforts made to give notice to Defendants or the reasons why it should not be required. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Because preliminary injunctions and TRO's

are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a TRO is warranted. He has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. Plaintiff's motion is denied.

## IV. Response Required

Plaintiff should show good cause why his Eighth Amendment claim and his First Amendment claims based on the lack of library access, should not be dismissed for failure to state a claim. Failure to respond by the deadline may result in the dismissal of these claims without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 11) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's due process claims, claims based on violations of prison regulations, and claims based on grievance procedures and responses are dismissed for failure to state a claim. All claims against Defendants Darcie Holthaus and Jeremy Hoepner are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **April 13, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Eighth Amendment claim and his First Amendment claims based on the lack of library access should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that that**:**

(1)     The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants Thomas Williams, Tyler Clark, Francisco Ayala, Kyli Sparks, Robion Leonard, Matthew Rudd, and Larry Teach.

(2)     The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen the remaining claims in Plaintiff's Amended Complaint.  If any claim survives screening, the Court will enter a separate order setting an answer deadline.  Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3)     Officials responsible for the operation of EDCF are directed to undertake a review of the subject matter of the remaining claims in the Amended Complaint:

> a.     To ascertain the facts and circumstances;
>
> b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and
>
> c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5)     Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included. The KDOC officials shall redact and/or mute audio for any personal identifiers included in  any video or recording submitted.

(6)     Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7)     No motion or other document addressed to the Amended Complaint shall be filed until the Court has reviewed the *Martinez* Report and entered an order screening the remaining claims in the Amended Complaint.

(8)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants, counsel for the KDOC, and the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated March 13, 2026, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**